IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KEVIN WOODARD,                    §
                                  §
V.                                §    Civil Action No. 4:05-CV-804-Y
                                  §
TACO BUENO RESTAURANTS, INC.,     §

ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The summary-judgment motion (doc. #17) of defendant Taco Bueno Restaurants, Incorporated ("Taco Bueno"), presents the issue of whether the Court should judicially estop plaintiff Kevin Woodard ("Woodard") from prosecuting against Taco Bueno his cause of action for employment discrimination. Taco Bueno insists that the Court should estop Woodard because he failed to disclose his ownership of this cause of action to the bankruptcy court in his chapter 13 proceeding. Taco Bueno contends that the imposition of estoppel is warranted even though the cause of action arose after Woodard filed his voluntary petition for Chapter 13 bankruptcy and after the bankruptcy court confirmed Woodard's bankruptcy plan.

Woodard argues that because his cause of action against Taco Bueno "arose after his voluntary petition was filed and after the final plan was confirmed, he was not required to list the claim on his schedules or submit it to the trustee for administration." Woodard principally relies on 11 U.S.C. § 1327(b) and (c), which state that upon confirmation of a chapter 13 bankruptcy plan, all property of the bankruptcy estate vests in the debtor free and clear of any claims of any creditor provided for in the confirmed

plan.  And he relies on an unpublished decision from the United States Court of Appeals for the 11th Circuit that is factually identical in all material aspects to this case.  *Muse v. Accord Human Resources,* No. 04-16491, 2005 U.S.App. LEXIS 7240 (11th Cir. April 18, 2005).  In *Muse,* the court held that a chapter 13 debtor's cause of action seeking to recover unpaid overtime wages under the Fair Labor Standards Act that arose after the debtor's chapter 13 plan had been confirmed was not property of the bankruptcy estate.  In reversing a grant of summary judgment on the grounds of judicial estoppel, that court held that because the cause of action arose post-confirmation, it was not the property of the bankruptcy estate and the debtor had no duty to disclose it to the bankruptcy court.  "Ergo," Woodard concludes, "since [his] potential claim here arose nearly three years after the chapter 13 plan was confirmed, it was not part of the bankruptcy estate, and [he] had no duty to disclose it to the bankruptcy court."

Taco Bueno, on the other hand, argues that Woodard had a continuing duty to disclose assets he acquired after the filing of his petition and after the confirmation of his chapter 13 plan.  In Taco Bueno's view, Woodard had "an affirmative duty to amend his bankruptcy filings to disclose any monetary claims that [arose] while his bankruptcy case [was] pending."  Taco Bueno relies on repeated statements from the United States Court of Appeals for the Fifth Circuit that read: "The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one."

2

*Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 600 (5th Cir. 2005); *In Re: In the Matter of: Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004)("The duty to disclose is continuous."); *In The Matter of: Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999)("The duty of disclosure in a bankruptcy proceeding is a continuous one, and a debtor is required to disclose all potential causes of action.")(Internal quotations and citations omitted.) Thus, Taco Bueno concludes, "The Fifth Circuit has specifically held that, where a bankruptcy debtor fails to disclose a pending lawsuit in a bankruptcy proceeding, he or she is judicially estopped from continuing to prosecute that lawsuit."

For the reasons stated below, the Court concludes that applying judicial estoppel would be an inappropriate use of the Court's equitable powers in this case. Not only did Woodard's cause of action arise after the bankruptcy court confirmed his chapter 13 plan, but it arose more than two years after the confirmation and near the conclusion of the plan. But of overriding significance, as illustrated below, is the law's uncertainty in this circuit as to the status of assets acquired by a debtor after the confirmation of his chapter 13 bankruptcy plan and as to the duty of that debtor to disclose those belatedly acquired assets.

The circumstances in the cases Taco Bueno cites, *Coastal Plains, Superior Crewboats,* and *Jethroe,* all involve a debtor's cause of action that arose prior to the filing of bankruptcy coupled with the debtor's failure to disclose that cause of action

3

to the bankruptcy court.  These cases all hold that a debtor's lack of knowledge of the statutory duty to disclose will not excuse the non-disclosure as inadvertent.  *See e.g. Coastal Plains,* 179 F.3d at 212 (debtor's claimed lack of awareness of statutory duty to disclose cause of action "is not relevant").  The law in that context is well settled and the duty to disclose is beyond dispute. Here, however, given the uncertainty of both the law and Woodard's duty under it, application of the equitable doctrine of judicial estoppel would work an inequity.  The Court, being obligated to afford equity, will not employ an equitable doctrine to work an injustice for one and a windfall for another.

I.   FACTUAL BACKGROUND

    Unlike the legal issue before the Court, the facts in this case are straightforward.  On December 11, 2001, Woodard filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas.  Woodard submitted his chapter 13 bankruptcy plan with his voluntary petition on that same date.  The bankruptcy court confirmed Woodard's chapter 13 bankruptcy plan on October 2, 2002.  Under the plan, Woodard paid $11,482 over forty-nine months.  Woodard received his discharge from bankruptcy on March 3, 2006.

    Woodard began working for Taco Bueno in November 2004.  His chapter 13 bankruptcy had already been filed and his plan already confirmed, but the bankruptcy was still pending.  According to

4

Woodard, he suffers from a disease called thoracic outlet syndrome and claims this syndrome "causes his arm to lock up." Woodard alleges that throughout his employment at Taco Bueno, he suffered discrimination because of his disability. Woodard claims he lodged a complaint through Taco Bueno's internal complaint line. But after making the complaint, Woodard alleges that he suffered retaliation. Taco Bueno fired Woodard on August 29, 2005. At that time, Woodard was continuing to make payments in accordance with his confirmed plan. Woodard contends that Taco Bueno's reasons for his termination where pretext and that the real reasons for his termination were his disability and retaliation for having filed a complaint through Taco Bueno's internal complaint line.

After filing with the Equal Employment Opportunity Commission and receiving permission to pursue his cause of action, Woodard filed the above-styled and -numbered case on December 19, 2005, before he had finished making his payments under his confirmed plan. Although his complaint does not demand a specific amount of money, in his initial disclosures to Taco Bueno under FED.R.CIV.P. 26(a)(1), Woodard estimated the total of past and future lost wages to be $1,240,683. Woodard received his discharge from bankruptcy in March 2006.

## II. ANALYSIS

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   In this case, the parties agree as to the material facts that inform the Court's decision.   Both parties agree that Woodard's cause of action arose after he had filed for chapter 13 bankruptcy, after the bankruptcy court had confirmed Woodard's chapter 13 bankruptcy plan, but before he completed that plan and was entitled to his discharge from bankruptcy.   The parties also agree that the Court can take judicial notice of Woodard's bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Texas.   *See also* FED.R.EVID. 201(b)(2); *Patterson v. Mobil Oil Co.,* 335 F.3d 476, 481 n.1 (5th Cir. 2003)(taking judicial notice of state-court proceedings not made part of record on appeal).   What the parties do dispute are legal questions—mainly, whether Woodard had a continuing duty to disclose assets he acquired post petition and post confirmation and whether Woodard should be deemed judicially estopped from prosecuting his employment-discrimination cause of action for his failure to disclose that cause of action to the bankruptcy court.   Thus, there is no genuine issue as to any material fact requiring resolution before the Court can rule on Taco Bueno's motion for summary judgment.   As the movant, Taco Bueno bears the burden of demon-strating that it is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).

Because Taco Bueno raises judicial estoppel in the context of a bankruptcy case, the Court will apply federal law.   *Coastal*

6

*Plains,* 179 F.3d at 205. Judicial estoppel is a common-law equitable doctrine invoked by a court at its discretion to prevent a party from taking inconsistent positions in litigation. *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001); *Superior Crew Boats,* 374 F.3d at 334.

> The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest. Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary.

*Coastal Plains,* 179 F.3d at 205 (internal quotations, emphasis, and citations omitted). The doctrine is typically invoked when a court finds that an intentional self-contradiction is being used as a means of obtaining an unfair advantage in a forum provided for suitors seeking justice. *Superior Crew Boats,* 374 F.3d at 334-35.

In this circuit, there are three requirements that generally must be met for judicial estoppel to be applied in a situation (such as this one) where a debtor-plaintiff failed to disclose a cause of action to the bankruptcy court as an asset to be included in the bankruptcy estate. First, the debtor-plaintiff is judicially estopped only if his position is clearly inconsistent with the previous one. *Id.* at 335. That is, the debtor-plaintiff represented to the bankruptcy court that he did not own a cause of action but then turned around and asserted that cause of action he disclaimed in another court. Second, the court must have accepted

7

the previous position.  *Id.*  That is, the bankruptcy court must have accepted the debtor-plaintiff's assertion that he did not own a cause of action.  And third, the debtor-plaintiff's non-disclosure of his cause of action to the bankruptcy court was not inadvertent.  *Id.*  That is, there is no legal justifiable excuse for the debtor-plaintiff's failure to disclose the cause of action to the bankruptcy court.

According to the Fifth Circuit, a "debtor's failure to satisfy [his] statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Coastal Plains,* 179 F.3d at 210 (emphasis in original).  The court explained that to prove that a failure to disclose was inadvertent, the debtor must show not that he was unaware that he had a duty to disclose his claims but that, at the time he filed his bankruptcy petition, he was unaware of the facts giving rise to them. *Jethroe,* 374 F.3d at 336.  Thus, the "lack of awareness of [a debtor's] statutory disclosure duty for [his] claims . . . is not relevant," and generally will not excuse a debtor's non-disclosure. *Coastal Plains,* 179 F.3d at 212.  But as mentioned above, that "statutory duty" in those cases was well settled and beyond dispute.  As will be illustrated below, Woodard's "statutory duty" in this case is nothing short of an enigma.

At the time Woodard filed his voluntary petition for bankruptcy under chapter 13 of the code, this cause of action had not

arisen.    In  fact,  Taco  Bueno  had  not  yet  employed  Woodard.
Obviously  then,  at  the  time  he  filed  his  petition  for  bankruptcy
Woodard  had  no  possibility,  much  less  duty,  of  disclosing  this
cause  of  action.

But  Woodard's  discrimination  cause  of  action  did  arise  while
his  chapter  13  bankruptcy  was  still  pending.    The  pivotal  question
now  is  whether  under  chapter  13  of  the  bankruptcy  code  Woodard  had
a  continuing  duty  to  disclose  this  cause  of  action  up  until  his
bankruptcy  case  was  closed.

Determining  whether  a  debtor  has  a  continuing  obligation  to
disclose  assets  acquired  post  petition  and  post  confirmation  in  a
chapter  13  bankruptcy  proceeding  requires  a  review  of  two  facially
inconsistent  sections  of  the  bankruptcy  code:  11  U.S.C.  §§  1306  and
1327.    As  one  court  has  acknowledged,  "the  status  of  the  property
of  the  [bankruptcy]  estate  after  the  confirmation  of  a  chapter  13
plan  is  a  controversial  issue  in  itself."    *Barbosa v. Doreen,* 235
F.3d  31,  36  (1st  Cir.  2000).    And  some  bankruptcy  courts  have  noted
that  these  sections  of  the  code  "'are  difficult  to  reconcile,'  . .
.  and  perhaps  even  impossible  to  reconcile."    *In re Barbosa,* 236
B.R.  540,  545  (Bankr.  D.  Mass.  1999)(quoting  *In re Rangel,* 233  B.R.
191,  194  (Bankr.  D.  Mass.  1999)).

There  is  no  dispute  that  the  commencement  of  a  chapter  13
proceeding  creates  a  bankruptcy  estate.    *See*  11  U.S.C.  §  541(a).
And  had  Woodard's  cause  of  action  arisen  prior  to  his  bankruptcy's
commencement,  he  certainly  would  have  been  obligated  to  disclose  it

9

for inclusion in the estate. *See* 11 U.S.C. § 541. But section 1306 of the bankruptcy code adds:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Thus, "under chapter 13, property of the bankruptcy estate includes, in addition to the property specified in [section] 541, 'all property of the kind specified in such section that the debtor acquires **after** the commencement of the case but before the case is closed, dismissed or converted . . . .'" *In re Wakefield,* 312 B.R. 333, 338-39 (Bankr. N.D. Tx. 2004)(quoting 11 U.S.C. § 1306(a)(1)) (emphasis in original). However, section 1327 states:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests **all of the property of the estate** in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the

> property vesting in the debtor under subsec-
> tion (b) of this section is free and clear of
> any claim or interest of any creditor provided
> for by the plan. (Emphasis added.)

These two sections create a contradiction as to the proper treatment of a debtor's assets acquired after confirmation. Section 1306 seems to indicate that the bankruptcy estate continues in existence until the case is closed, dismissed, or converted, and all assets acquired by a debtor during this time are the property of the estate if those assets are of the kind specified in section 541 ("§ 541 assets").  On the other hand, section 1327 clearly indicates that all property in the bankruptcy estate at confirmation is vested in the debtor free and clear of any claims.

Confounding the enigma these two sections create, four United States circuit courts have adopted separate approaches to determine the appropriate disposition of assets that a chapter 13 debtor acquires after confirmation.  The first approach, sometimes called the estate-termination approach, takes the view that all property of the estate becomes the property of the debtor upon confirmation and ceases to be property of the estate.  *See Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir. 2000)(explaining the estate-termination approach).  Thus, the bankruptcy estate, at the time of confirmation, ceases to exist. *See In re Oliver,* 193 B.R. 992, 994 (Bankr. N.D. Ga. 1996); *In re Petruccelli,* 113 B.R. 5, 15 (Bankr. S.D. Cal. 1990).  But this approach, if it doesn't rewrite the express language of the

statute, at least renders section 1306 meaningless after confirmation. Section 1306 does not state that the property of the bankruptcy estate includes all § 541 assets that the debtor acquires after commencement but prior to confirmation. Rather, that section mandates that the bankruptcy estate include such § 541 assets that the debtor acquires after commencement but prior to the closing, dismissal, or conversion of the case. Congress could have easily limited bankruptcy estate assets to those acquired before confirmation. For good reason, Congress chose not to, as the Court will discuss below. It is not within the purview of a court to rewrite a statute under the guise of judicial interpretation. Based on this, there is no way to be certain that our circuit would have adopted this approach.

The second approach, sometimes called the estate-preservation approach, takes the view that all property of the estate remains property of the estate after confirmation until discharge, dismissal, or conversion. *Telfair,* 216 F.3d at 1340 (explaining the estate-preservation approach). Thus, the language in section 1306 is interpreted to mean that confirmation of a plan under chapter 13 "is not relevant to determining whether property is or is not property of the estate. The relevant events . . . are commencement . . . and either dismissal, closing, or conversion . . . ." *Security Bank of Marshaltown v. Neiman,* 1 F.3d 687, 691 (8th Cir. 1993). But that approach ignores the express language in section 1327 and renders meaningless its provision for the vesting

12

of the estate in the debtor at the time of confirmation. Under that approach, the vesting language in section 1327 does not become "relevant" until the case is either dismissed, closed, or converted. The statute states, however, that the bankruptcy estate vests in the debtor at the time of confirmation, not at dismissal, closure, or conversion. Congress is presumed to have purposely mandated that all property in the bankruptcy estate vest in the debtor at the time of confirmation, and a court may not merely ignore it. Because this approach also judicially rewrites the express language of the statute, one cannot be confident that our circuit would have adopted it, either.

The third approach accomplishes the King Solomon solution by "splitting the baby." Sometimes referred to as the estate-transformation approach or the middle-of-the-road approach, it holds that only such property necessary for the execution of the confirmed plan remains property of the bankruptcy estate after confirmation. Any remainder passes free and clear to the debtor. *See Telfair,* 216 F.3d at 1340 (adopting this approach); *Barbosa,* 235 F.3d at 36 (explaining this approach). But as with the previous approaches, this one also requires some judicial rewriting of the statute—this time both sections. Section 1306 does not state that only so much of the § 541 assets that the debtor acquires after commencement of the bankruptcy proceedings as are necessary for the execution of the confirmed plan become a part of the bankruptcy estate. To the contrary, section 1306 states that

13

**all** § 541 assets that the debtor acquires after commencement but prior to closing, dismissal, or conversion become part of the bankruptcy estate.  Whether that property is necessary for the execution of the confirmed plan is irrelevant.  And section 1327 does not provide that only so much of the assets in the bankruptcy estate as are necessary to execute the confirmed plan do not vest in the debtor at the time of confirmation.  Rather, it states that **all** of the assets in the estate vest in the debtor at the time of confirmation.  Likewise, whether that property is necessary for the execution of the confirmed plan is irrelevant.

Even worse, the King Solomon approach would require a court to determine which assets should vest in the debtor and which should remain in the bankruptcy estate.  That daunting task is not, thankfully, provided for in either section.  And finally, that approach ignores section 1329, which provides for the modification of a confirmed plan based on a change in the financial circum-stances of a debtor.  If the property of the bankruptcy estate at the time of confirmation becomes permanently set, with the only allowable addition to it being property a court determines is necessary for the completion of the confirmed plan, then section 1329 is meaningless because the plan could never be modified. Consequently, there is little reason to believe that our circuit would have adopted this approach.

The fourth approach takes the view that by virtue of section 1327, all property of the estate at the time of confirmation vests

in the debtor free and clear of any claims of the creditors but that the bankruptcy estate does not cease to exist.  Instead, the bankruptcy estate continues to be funded by the debtor's regular income and assets acquired post petition as specified under section 1306.  *Barbosa,* 235 F.3d at 36-37.  This approach has been hailed by several commentators because it gives meaning to both sections and displaces the analysis used in the estate-transformation approach.  *Id.* (citations omitted).  But the Court fails to see how this approach gives harmonious meaning to both sections.  First, at the time of confirmation, the debtor does not enjoy the property of the bankruptcy estate free and clear of the creditors.  The debtor has to faithfully fulfill his obligations under the plan first, which includes paying his creditors the amounts set forth in his confirmed plan in accordance with its payment schedule.  And that can last for as long as sixty months.  Second, how can the bankruptcy estate receive assets acquired after confirmation that will be used to pay claims of creditors if those assets are considered vested in the debtor free and clear of any creditor claims?  This approach seems to hold anomalously that a debtor must fund claims against the estate with assets that are vested in him free and clear of any claims.  In other words, this approach takes the position that the estate continues to exist with assets but at the same time is divested of those assets and unencumbered by any creditors.  Lacking logical consistency, surely our circuit would have been reluctant at best to adopt this approach.

Still more, the Court has not found—nor have the parties presented—any case from the United States Court of Appeals for the Fifth Circuit addressing this conflict.  Woodard relies on *In re Simmons,* 765 F.2d 547 (5th Cir. 1985), to suggest that the Fifth Circuit agrees that "property acquired post confirmation vests in the debtor, and is not part of the bankruptcy estate."  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6-7.  Woodard specifically relies on a statement located on page 550 of that opinion that reads: "Under section 1327, the order of confirmation vests all of the property of the estate in the debtor free and clear of any claim or interest of any creditor provided for by the plan."  First off, that statement simply recites the law; it makes no attempt at interpreting what the statement means.  But more importantly, that statement is located in a part of the opinion where the appellate court was reciting Simmons's argument.  It was not a holding of the court, nor was it a statement of the law by the court.  It is not even dictum.  Worse still for Woodard, *Simmons* was not concerned about the acquisition of assets by a debtor, post confirmation, but rather, was addressing "what effect the confirmation of the plan may have had on [a secured creditor's] lien." *Id.* at 554.  Simmons contended that "upon confirmation, the homestead passed to [himself] free and clear of the lien." *Id.* at 555.  The Fifth Circuit responded, "We do not agree." *Id.*  The focus was on what effect the phrase "free and clear of any claim or interest of any creditor provided for by the plan" had on a secured creditor's lien

16

on property that had been transferred to the bankruptcy estate at the commencement of the chapter 13 bankruptcy.  Thus, *Simmons* not only fails to provide the support Woodard contends it does, it provides no guidance for determining the status of unencumbered assets acquired by a debtor after confirmation.

Finally, to further illustrate the unsettled nature of this issue, the Court will demonstrate that there is yet another approach that can be taken—one that the Court believes is the most logical in light of the chapter 13 scheme and Congress's goals. "The importance of reading the bankruptcy code as a whole cannot be overstated." *Wakefield,* 312 B.R. at 338 (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370-72 (1988)).

Up until now, all of the above approaches have read the term "vest" to mean that a debtor receives the right to enjoy his assets, which were transferred to the bankruptcy estate at the commencement of the chapter 13 proceeding, free and clear of any claims of any allowed unsecured creditor at the time of confirma-tion.  In light of chapter 13 and what it seeks to achieve, however, the Court concludes that that is an incorrect interpreta-tion of what is meant by "vest" in section 1327.

Of pivotal importance to a correct and internally consistent construction of the bankruptcy code is this: unlike other chapters of the code, chapter 13 does not require a debtor to liquidate most of his assets.  *See, e.g.,* chapter 7 of the bankruptcy code.  But

17

section 541 does provide for the creation of a bankruptcy estate at the commencement of a chapter 13 bankruptcy, and section 1306 furthers its scheme and logic by requiring any newly acquired assets to be included.  Also,  unlike other chapters in the code, chapter 13 allows for a debtor to remain in possession of those assets even though their ownership has been transferred to the bankruptcy estate.  *See* 11 U.S.C. § 1306(b).  Thus, the Court must conclude that at the commencement of a chapter 13 bankruptcy, the bankruptcy estate is created via the taking of title to all assets; the estate continues to exist until the first to occur of closure, dismissal, and conversion; and any § 541 assets the debtor acquires after commencement but before dismissal, closure, or conversion are also added to the estate.  *See* 11 U.S.C. §§ 541 and 1306.  The debtor, however, keeps possession of those assets even though they are owned by the bankruptcy estate.  *See* 11 U.S.C. § 1306(b).

But at the point of confirmation, section 1327 vests in the debtor all property of the bankruptcy estate free and clear of any claims of any creditor provided for by the plan.  The bankruptcy code does not provide a definition of the term "vest."  And that term is used in only two other sections of the code, one being section 1141(b), which is identical to section 1327, and is thus of no help.  It is also used in section 349, which provides that the effect of a dismissal is to "revest" the bankruptcy estate in the entity in which such property was vested immediately before the commencement of the bankruptcy.  That section seems to operate as

18

a vehicle to place all parties affected by the commencement of the bankruptcy back into the position they enjoyed immediately prior to its commencement.  Thus, neither is it helpful.

In the absence of a definition for the term "vest," the Court must construe it in accordance with its ordinary or natural meaning.  *See FDIC v. Meyer,* 510 U.S. 471, 476 (1994)(internal citations omitted).  Black's Law Dictionary defines the term "vest" this way: "To give an immediate, fixed right of present **or future enjoyment.**"  BLACK'S LAW DICTIONARY 1563 (6th ed. 1990) (emphasis added).  Webster defines "vest" as: "To give a person a legally fixed immediate right of present **or future enjoyment (as an estate).**"  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1312 (1991) (emphasis added).  Applying these ordinary definitions of the term, the Court believes that at the time of confirmation, the debtor is given an immediate and fixed right to the future enjoyment of the bankruptcy estate, whatever assets it consists of, free and clear of any claims of any creditor provided for by the confirmed plan. Although this is an immediate and fixed right, it is one the debtor does not enjoy until he has faithfully completed his obligations under the plan and is entitled to a discharge.  Under this interpretation, after confirmation, the bankruptcy estate continues to exist and assets may be added to the estate in accordance with section 1306, but the debtor is immediately vested with the right to the future enjoyment of the assets in that estate free and clear of any creditor claims provided for by the plan once he faithfully

completes his obligations under the plan and is entitled to a discharge.  Reading section 1327 together with section 1306 and the remainder of the chapter 13 scheme, the Court believes that this is the most logical reading of these facially inconsistent provisions.

> A provision that may seem ambiguous in isola-
> tion is often clarified by the remainder of
> the statutory scheme—because the same termi-
> nology is used elsewhere in a context that
> makes its meaning clear . . . **or because only
> one of the permissible meanings produces a
> substantive effect that is compatible with the
> rest of the law** . . . . (Emphasis added.)

*United Sav. Assco.,* 484 U.S. at 371.  The Court believes that this approach is compatible with the rest of the chapter 13 scheme.

"A major goal of bankruptcy is to provide debtors [with] a 'fresh-start' in life by furnishing a way to obtain relief from their debts."  *In re Arnold,* 869 F.2d 240, 242 (4th Cir. 1989). Thus, after no more than five years, a debtor knows he will get a fresh start and enjoy all of the assets in the bankruptcy estate free and clear of any claims of any of the creditors he originally owed prior to filing for bankruptcy.  *See* 11 U.S.C. §§ 1322(c) and 1329(c)(stating a chapter 13 plan can last no longer than five years).  But the debtor does not enjoy that fresh start until he has received his discharge from the bankruptcy proceedings.  *See* 11 U.S.C. § 1328 (stating, "as soon as practicable **after completion by the debtor of all payments under the plan** . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . .")(emphasis added).  So if the debtor fails to make all of his

20

payments under the confirmed plan, he will not receive a discharge from all claims of his creditors, and will not enjoy his fresh start.  Against this backdrop, the term "vest," as used in section 1327, must mean the granting of an immediate and fixed right in the debtor to enjoy all of the assets of the bankruptcy estate free and clear once he faithfully completes his obligations under the confirmed plan and is entitled to receive a discharge from bankruptcy.  Otherwise, if the assets are free and clear of any creditor claims at the time of confirmation, then whether a debtor faithfully completed his confirmed plan would be irrelevant.

Although chapter 13 grants a large benefit to the debtor, Congress also intended that "the debtor repay his creditors to the extent of his capability during the chapter 13 period." *Arnold,* 869 F.2d at 242.  Under the code, a bankruptcy court can only approve a chapter 13 plan if it was proposed in good faith, provides for the best interests of the creditors, and ensures that the debtor will be able to make all of the payments under the plan. *See* 11 U.S.C. § 1325(a)(4)-(6); *see also Barbosa,* 235 F.3d at 38 (discussing the "best-interests-of-the-creditors" test and the "ability-to-pay" standard in section 1325).  Recognizing, however, that a debtor's financial circumstances may change after confirmation but before the debtor's completion of the plan, Congress decided to allow a debtor, bankruptcy trustee, or an allowed unsecured creditor to seek a modification of the confirmed plan. *See* 11 U.S.C. § 1329.

If a debtor's financial condition after confirmation were to deteriorate such that the debtor no longer had the ability to make the payments under the plan, the debtor could seek to have the plan modified.  But because Congress also wanted to ensure that a debtor paid his creditors to the extent of his capabilities, Congress also provided that an allowed unsecured creditor could seek a modification of the confirmed order if the debtor's financial circumstances improved, giving the debtor the capability to make larger payments under the plan.  "Certainly Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors." *Arnold,* 869 F.2d at 242.  "Modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *In the Matter of Meza v. Truman,* No. 05-10739, 2006 U.S.App. LEXIS 26304, slip op. at 2 (5th Cir. Oct. 16, 2006).

But if there is going to be an increase in the debtor's obligation to pay under the plan because his ability to pay has increased, then those assets that the debtor acquired after confirmation must be included in the bankruptcy estate because if they are not, then the allowed creditors under the plan have no claim upon them.  It's a legitimate *quid pro quo*: in exchange for a debtor's receiving complete forgiveness for his debts and the right to keep his assets (versus having them liquidated), the debtor has a continuing obligation to be truthful and forthcoming

about all of his assets—from commencement to discharge—so that the bankruptcy court, the trustee, and the allowed creditors can track any change in the debtor's ability to pay his debts.  Thus, "for chapter 13 to work, . . . the chapter 13 debtor has a continuing duty to disclose property and earnings acquired after the commencement of the case." *Wakefield,* 312 B.R. at 339.  The creditors must be able to rely on the financial disclosures of a debtor when making decisions throughout the bankruptcy, including whether to object to the confirmed plan or to seek a modification.  That ability is impaired when disclosure by the debtor is incomplete, untruthful, or less than forthcoming.

Viewed against this backdrop, the Court concludes that at the commencement of a chapter 13 proceeding, an estate is created that continues to exist until the proceeding is closed, dismissed, or converted.  The Court also concludes that any assets the chapter 13 debtor acquires after commencement but prior to discharge must be disclosed to the bankruptcy court.

However logical this Court may believe its approach to the conundrum presented by the apparent clash between sections 1306 and 1327, the fact remains that at the time Woodard's cause of action arose, the status of a debtor's post-confirmation assets and his duty to disclose them was uncertain at best.  Even the most versed in bankruptcy law are unclear on this issue.  And whether the Fifth Circuit will bless this Court's reconciliation of sections 1306 and 1327 is highly debatable.

The uncertainty created by sections 1306 and 1327 is not all that faced Woodard and his counsel during the pendency of his chapter 13 proceeding.  The bankruptcy code in its entirety is not like other legislation; it is highly technical and its comprehension requires a specific expertise not possessed by most lay persons and often, not possessed by competent lawyers.

Having noted the code's complexity, however, it is equally true that ignorance of the law is hardly ever an excuse and, especially relevant here, our circuit does not excuse a debtor's ignorance of his duty to disclose.  *Jethroe,* 374 F.3d at 336.  But the maxim, "ignorance of the law is no excuse," is not absolute; there are exceptions.  The Supreme Court has refused to apply the maxim with respect to highly technical statutes that present "the danger of ensnaring individuals engaging in apparently innocent conduct."  *See Bryan v. United States,* 524 U.S. 184, 194 (1998); *see also Lambert v. California,* 355 U.S. 225, 229-30 (1957)(refusing to apply maxim to an obscure felon-registration statute).

But here, the Court is not, on behalf of the parties and the bankruptcy proceeding, tasked with settling the law as to Woodard's failure to disclose his cause of action.  That was for another time (which has passed), another place, and another court.  Here, rather, the Court is concerned with the collateral consequences of that failure and especially with whether that failure should result in Woodard's being estopped in this case and by this Court from suing Taco Bueno on the undisclosed claim.

The Supreme Court has stated that the factors for considering the appropriateness of judicial estoppel "do not establish inflexible prerequisites or an exhaustive formula for determining [its] applicability . . . additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine,* 197 U.S. at 751.  The Court concludes that, in cases such as this, an exception must also be made where the law is unclear and unsettled.  To impose judicial estoppel against one whose duty is unclear would violate a fundamental principle in our jurisprudence: people are entitled to fair notice of what the law is before being held accountable under it.  *See* U.S. CONST. amend. V.  Although our jurisprudence does not require actual knowledge of the law in order to be held accountable under it, even a just application of the notion of **constructive knowledge** relies on the law's being clear and having been published to the public.  Here, neither is the case.  The law is not clear and because it is not clear, it has not been made known to the public.

The primary purpose of the judicial-estoppel doctrine is to protect the integrity of the judicial process by preventing a party from abusing that process in an effort to gain an unfair advantage in litigation.  It was not designed to estop the pure of heart, whose only sin is ignorance of unsettled law, and, at the same time, grant a windfall to a litigant who may very well be liable for wrongful conduct.  For that reason, the Court concludes that Woodard's failure to disclose his cause of action under this

25

factual situation based on what was an honest mistaken belief that he had no duty to disclose it amounts to inadvertence. Accordingly, the Court declines, under the factual circumstances of this case, to judicially bar Woodard from pursuing his employment-discrimination claims.

III. CONCLUSION

Accordingly, the Court DENIES Taco Bueno's motion for summary judgment.

SIGNED December 8, 2006.


_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE